In the Matter of the Probate of the Will of MARY E. BOYLE, Deceased.

Surrogate's Court, Broome County, February 25, 1954.

*Boris Schneeberg* for Joseph Boyle, proponent, respondent on the motion.

*John H. Weidner,* special guardian for Rosalie D'Angelo, an infant, respondent.

*Robert L. Sweeney* for St. Mary's Roman Catholic Orphan Asylum of Binghamton, respondent.

*Miles B. Amend* for Christian Brothers Institute, respondent.

*Charles V. Scanlan* and *Miles B. Amend* for House of Calvary, respondent.

*Anthony Fischette,* contestant in person, for the motion.

*Alfred W. Burkhart* for Alexander A. D'Angelo, respondent.

PAGE, S. In this contested probate proceeding, one of the objectants, Anthony Fischette, has obtained an order to show cause why the proponent, Joseph Boyle, should not be examined before trial pursuant to the provisions of section 288 of the Civil Practice Act. The movant seeks such examination, preparatory to the trial of his objection to probate by reason of fraud and undue influence alleged to have been exercised upon the deceased by said Joseph Boyle, who is sole beneficiary of her will.

The movant herein has stated that the matters concerning which he is desirous of examining said respondent will include: " As to the correspondence, records and papers in connection with the dealings between said witness and his mother, Mary E. Boyle, deceased, over a period of years, and with request that said witness to be compelled to produce all such correspondence, records, and papers; as to all dealings which said witness had

with the decedent during the last year of decedent's life, including examination as to all bank records of his handling of decedent's funds; examination as to decedent's securities sold by said witness during the last year of decedent's life; examination as to moneys withdrawn by said witness from decedent's bank account during the last year of decedent's life; examination of said witness as to the preparation and execution of a purported Power of Attorney from decedent to said witness while said decedent was seriously ill in the Heylmun Nursing Home; examination as to disposition of the moneys obtained from decedent's bank account, and from the moneys received by said witness from the sale of decedent's securities; examination of said witness as to the whereabouts of decedent's jewelry, furniture and other personal property valued at several thousands of dollars; examination as to promissory notes of said Joseph J. Boyle held by the decedent in her safe deposit box in the First National Bank of Binghamton, N. Y.; that at said examination said witness to be compelled to produce records, checks and vouchers in connection with said transactions, including records of securities of decedent which said witness sold, and also including records of moneys withdrawn.''

It is contended by counsel for the respondent, the only legitimate purpose for an examination such as is here sought being to throw some light upon the situation surrounding the testatrix in her relationships with the respondent, her mentality, state of mind and apparent attitude and feeling toward him, that the above indicated scope of the requested examination would go far beyond any that would be justifiable in an examination appertaining to any proceeding other than for the discovery of assets.

In considering this argument, it must be remembered that evidence as to transactions between a testator and a beneficiary of his alleged will who is charged with fraud or undue influence, or both, in connection therewith, as well as oral or written declarations made by the testator at somewhere near the date of the will's execution are competent for a strictly limited purpose only. The rationale of such evidence is its possible showing of whatever opportunity the beneficiary may have had to have exercised fraud or undue influence and the testator's feeling or attitude toward him. Of course, such evidence, standing alone, would not constitute proof of fraud or undue influence. It would serve merely as an element to be considered in conjunction with other evidence. In a case, such as this, where, as it is intimated, the testator appears to have reposed great trust and

confidence in the beneficiary, transactions between them might tend to show that the former was under the complete domination of the latter, or, quite the contrary, it might disclose a situation tending strongly to support a negative answer to the question as to any fraud or undue influence having been exerted upon the testator.

As was stated by the court in *Matter of Sperry* (138 Misc. 549, 553), " It is, of course, established that the value of a testator's estate is a material subject of inquiry on an issue of undue influence." In this connection the court cited *Matter of Woodward* (167 N. Y. 28); *Matter of Van Ness* (78 Misc. 592), and *Matter of Tymeson* (204 App. Div. 840). The mere fact that the examination might extend to an inquiry as to the respondent's knowledge of the personal and financial affairs of the testatrix or that it might, incidentally, indicate the existence of some previously hidden assets of the estate would not, necessarily, be incompetent, provided that it appeared to have a material bearing upon the nature of the relationship existing between the testatrix and the respondent. But, as hereinafter shown, it is not necessary to attempt the particularization of all the specific subjects of examination to be stated in the order allowing an examination before trial.

The present judicial tendency is definitely favorable to broadening the application of section 288 of the Civil Practice Act, by eliminating or qualifying previous limitations thereupon. Before 1931, examinations in relation to such issues as are here presented were confined to a period of time antecedent to the execution of the instrument in question. Apparently this was for the, seemingly very logical, reason that fraud or undue influence, if there was any casual connection between such factors and the execution of the instrument, must have occurred precedent to its execution, together with the concept, frequently found in other connections, that " presumptions do not run backwards ".

But in 1931, the case of *Matter of Putnam* (257 N. Y. 140), was decided to the effect that oral or written declarations of the testator subsequent to the execution of his will might be properly included within the scope of an examination before trial for the limited purpose of serving as a basis of inference as to the testator's state of mind, attitude, feeling and position at the time his will was executed in relation to the person or persons accused of having practiced fraud or undue influence, provided that such declarations occurred within a reasonably short time following the execution of the will. Due to the

consideration that the order for examination must, necessarily, prescribe limitations of time, some of the later cases have involved orders prescribing three years before and two years subsequent to the execution of the instrument in question, which I regard as practicable in the present instance, except that, in the present case, the testatrix lived less than two years following the execution of her will.

It appears that cases on this subject have, for the most part, involved oral or written statements or declarations of a testator. Although they have incidentally mentioned " transactions " and " acts ", none of the reported cases seem to have specifically dealt with and determined to what extent, if any, dealings and transactions such as those stated in the moving papers presently before us may be included within the scope of the examination. Since " actions speak louder than words ", there would seem to be no reason why the examination must be limited solely to oral or written declarations or statements. Accordingly, I am of the opinion that, insofar as they may be relevant and material as bearing upon the limited purpose for which all such evidence is received, that the examination may, insofar as it can be shown that the respondent was personally connected with such transactions, cover them.

In further considering the contention of the respondent that such transactions are immaterial in relation to any legitimate purpose of the contemplated examination, we need to consider what criterion, if any there may be, which may provide an answer to this question. As to the testimony which may be taken under section 288 of the Civil Practice Act, the statute provides that such testimony is that " which is material and necessary in the prosecution or defense of the action." What is " material and necessary "? An answer which commends itself to us was provided by Judge PECK, P. J. in the First Department in the case of *Marie Dorros, Inc.* v. *Dorros Bros.*, (274 App. Div. 11). An epitome of his reaction to this question in that case is that, since the purpose of the examination is preparation for the trial, regardless of the burden of proof, any evidence that would be material upon the trial is material in the examination before trial.

Wherever it is practicable that the examination be held before or otherwise under the immediate surveillance of the court, the practice should be to make the order simple and general in its terms rather than to attempt to foresee and specifically include all of the possible subjects of examination that counsel for the examining party believes he might wish to refer to in conducting

the examination. The examination presently applied for will be scheduled to be held before this court. The order to be settled will simply provide in general terms that the respondent may be examined as to all transactions between the decedent and himself during the above specified length of time. In this way it will be possible to avoid the crossings of any and all bridges that may be come upon until they are come upon.

The order to be settled herein, pursuant to the provision of section 296 of the Civil Practice Act, will direct the production at the examination of such books and papers as may be applied for and allowed upon its settlement.

Settle order accordingly.